## JUAN MARIA SPINETTE, RESPONDENT, *v.* THE ATLAS STEAMSHIP COMPANY, LIMITED, APPELLANT.

*Bill of lading — exemption from liability — for loss by theft, barratry of master or mariners — theft by purser not covered by exemption.*

Plaintiff's agent in New York delivered to the purser of defendant's ship a box containing two bags, each containing $5,000 in gold coin, to be delivered to plaintiff at Maracaibo, and received a bill of lading which recited among other things, that the company was not liable for any loss or detention of, or damage or injury to the goods, or the consequences thereof, occasioned by any or several of the following, among other causes, namely : theft on land or afloat, barratry of master or mariners, any act, neglect, or default of the pilot, master, mariners, engineers, servants or agents of the company.

One of the bags of coin was missing upon the delivery of the box to the plaintiff. Upon the trial of an action brought to recover the value of the same, evidence having been given tending to show that it was stolen by the purser, the court charged that under the bill of lading the defendant was liable if the bag was stolen by the purser.

*Held,* that this was correct; that the clause "theft on land or afloat" could not have been intended to exempt the carrier from a theft committed by the purser, who was placed in charge of the articles by the company itself.

That the phrase "barratry of master and mariners," did not include the purser of the ship, whose duties and responsibilities were entirely different from those of either of the classes of persons designated.

APPEAL from a judgment in favor of the plaintiff entered upon the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

*Everett P. Wheeler*, for appellant.

*Joseph H. Choate*, for respondent.

BRADY, J. :

This action was commenced on the 2d of November, 1874, to recover the value of a bag of American gold coin, containing five thousand dollars, belonging to the plaintiff, shipped on board the defendant's steamship *Corinth* on the 15th of May, 1874, through Messrs. Ribon & Munoz, plaintiff's agents in New York, to be carried to Maracaibo by way of Curaçoa, and there delivered to the plaintiff.

The complaint alleged that the plaintiff caused to be delivered to the defendant a certain box, containing ten thousand dollars in gold coin, and that somewhere between New York and Maracaibo one bag containing the five thousand dollars in question disappeared from said box, so that on arrival at the latter port the box was found to contain only one-half the quantity shipped in it.

The defendant, by its answer, denies that the box, when delivered to the defendant, contained ten thousand dollars in gold, and averred that it contained only five thousand dollars, and that if any part of the contents of the box were lost while in the custody of the defendant, the loss was occasioned by one of the following causes mentioned in the bill of lading, namely: theft on land or afloat, barratry of master or mariners, or by some act, neglect or default of the pilot, master, mariners, engineers, servants or agents of the defendant, and not by the negligence of the defendant itself.

It was admitted that the defendant is a corporation created and organized under the laws of Great Britain, and is a common carrier of goods for hire from New York to Maracaibo in Venezuela.

The plaintiff proved the delivery of the box containing the ten thousand dollars, properly screwed up, strapped and sealed, on board the vessel, in the cabin, to the purser, and that he gave a

ship's receipt for it. On the same day the receipt was surrendered upon the delivery of a bill of lading, which recites among other things as follows: " The company is not liable for any loss or detention of or damage or injury to the goods or the consequences thereof, occasioned by any or several of the following causes, namely: * * * theft on land or afloat; * * * barratry of master or mariners; * * * interruption to navigation by ice, transshipment; any act, neglect or default of the pilot, master, mariners, engineers, servants or agents of the company."

The vessel sailed from New York for Curaçoa on the 15th of May, 1874. It arrived at Curaçoa in about twelve days. The box containing the gold was, all the time, in the personal custody of the purser, being deposited in the specie locker of which he alone had the key, to which no one else had access, such locker opening only in to the purser's room.

The plaintiff proved that, shortly before the sailing of the vessel from New York, there was delivered to the purser another parcel of pencils and penholders wrapped in brown paper, which was addressed in the handwriting of Victor W. Brundage, a clerk of LeRoy W. Fairchild & Co., and sealed with their seals, and bearing a printed label of that firm pasted upon it, all directed to Mr. J. C. Rodrigues, which was a private adventure of the purser, and that, on the arrival of the wooden box at Maracaibo, which was opened at the custom house in the presence of the plaintiff and the agent of the defendant at that port, it was found to contain only five thousand dollars in gold, which was inclosed in one specie bag, and that the remaining space in that box contained various papers, among which was the brown paper wrapping of the pencil package, which was identified with that which had been upon it on its delivery to the purser in New York. The plaintiff having rested, the defendant moved that the complaint be dismissed, on the ground that the evidence tended to show that the loss of the gold had happened by one of the perils excepted in the bill of lading, and that there was no proof of negligence on the part of the defendant.

The defendant's principal witness was the purser, who denied having taken the gold, but his cross-examination greatly impaired

the effect of his denial, and showed him to be a suspicious character. He admitted having taken and kept in his stateroom the paper wrapping from the package of pencils, but could give no satisfactory or consistent reason for so doing, claiming to have opened it at Porto Cabello after the steamer had landed the box at Curaçoa, and sailed from that port to Porto Cabello. The agent of the defendant testified that the purser had been in their employ for two or three years, and that they had had no fault to find with him; that they had taken him upon written recommendation of a merchant who was known to them; that they had heard nothing, except the charge in this case, to his detriment, and retained him in their employ still; that trading by the purser on his own account was contrary to the regulations of the company, and that, if they knew of a purser trading for himself or his brother, they would discharge him at once.

It appeared that the box was delivered by the purser at Curaçoa to the house of Jesurum & Zoon, defendant's agents at Curaçoa. The captain of the *Pico*, by which steamer it was conveyed from Curaçoa to Maracaibo, testified that it lay in the counting-house of Jesurum & Zoon for several days waiting for the *Pico*, and that he received it there, and it looked as if the seals were then intact, but that Jesurum's clerk took it for granted there was an error in the New York invoice, because he said it fell short of the weight of the New York invoice.

At the defendant's request, the court submitted to the jury the two questions, whether the plaintiff delivered to the defendant two bags of five thousand dollars each or only one bag, and whether the missing bag of gold was taken from the box while it was in the defendant's custody? The court charged that the burden of proof was on the plaintiff to satisfy the jury on the whole case, that two bags of five thousand dollars each were delivered to the defendant, and that the defendant was liable for the gold, if the jury found that it was delivered to the purser on board and lost through negligence of the company or its agents, or by any other means not excepted in the bill of lading; to this proposition the defendant did not except; that theft by the purser is not barratry, and, if lost by such means, defendant is liable; and that the defendant is liable for diligence in keeping

the gold while in charge of its agents at Curaçoa before shipment on the *Pico*, and, if there lost by negligence of the company, defendant is liable; and that, the delivery of the gold being shown, the defendant is bound to account for it, and that, if they fail to show the loss by any one of the excepted perils, the defendant is liable.

The defendant excepted to the refusal of the court to order a verdict for the defendant, and to the refusal of the court to charge that the defendant is not liable for any loss of the gold at Curaçoa, unless negligence is shown on the part of itself or its agents, and that there was no proof of such negligence, and to the charge that theft by the purser is not barratry, and to the charge that the defendant was liable for theft by the purser: this is adopted as a correct statement of the facts.

Two points are presented for our consideration by this appeal, which are thus stated by the appellant's counsel:

*First* — Is the defendant liable under the bill of lading for theft by the purser?

*Second* — Is the defendant liable for loss of the specie while it was stored at Curaçoa, in the absence of proof of negligence on its part.

In reference to the first question, we think that a reasonable construction should be given to the clause "theft on land or afloat," and that it could not have been intended to exempt the carrier by that phrase from the theft committed by the purser placed in charge of the articles by the carriers. A contrary interpretation of the contract would, to a great extent, render the engagement of the carrier valueless. Indeed it may be said that if such a phrase should be held to relieve the carrier from the loss occasioned by such a theft as mentioned, it would be very easy by collusion with the purser to secure the possession and benefit of large amounts of property. If the carrier desired to absolve himself from liability by such a circumstance, he should make the terms of the contract clear beyond all cavil. In the case of *Simmons* v. *Law* (3 Keyes, 217), the condition of the bill of lading was "the property is to be delivered in like good order and condition at the port of New York, dangers of the seas, land carriage, and river navigation, thieves and robbers excepted,"

and it was conceded by the defendant's counsel in that case, and the view was concurred in by the court, that if the missing treasure was stolen by the servants of the carrier, the carrier would be responsible for the loss, notwithstanding the exemption of the contract. We regard this as an indication, if not an authority, on the question considered, and accept it as a just exposition of the law. We are entirely satisfied that the phrase "barratry of masters and mariners," does not include the purser of the ship whose duties and responsibilities are entirely different from either of the classes of persons designated.

In regard to the second question, the evidence shows that the specie, when landed at Curaçoa, was placed in the custody of the defendant's agents at that place. There was also some evidence bearing upon their negligence in caring for it while in their custody, and the question of negligence was submitted to the jury with proper instructions, and their finding upon that subject cannot be disturbed. We may add that the purser should be regarded as the fiscal agent of the owners, that is, of the company, and that his custody of the specie was their possession of it, the ship being only the vehicle or means of transportation, on board of which he acts as custodian of the things placed in his charge. If, it may also be said, the specie was not stolen by the purser, there is no evidence to warrant the assumption that it was stolen by any other person; and this conclusion renders the defendants liable for the loss unless they prove that it was within one of the excepted perils. This was not done.

We think for these reasons the judgment should be affirmed.

DAVIS, P. J., and INGALLS, J., concurred.

Judgment affirmed.